UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| REYNALDO  FLORES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-283 |
| | § | |
| TDCJ TRANSITORIAL PLANNING | § | |
| DEPART. SOUTHERN REGION INST. | § | |
| DIVISION ET AL, | § | |
| | § | |
| Defendant. | § | |

## AMENDED MEMORANDUM AND
## RECOMMENDATION TO DISMISS ACTION

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C.

§ 1983.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321

(1996), any prisoner action brought under federal law must be dismissed if the complaint

is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant immune from such relief.  *See* 42 U.S.C. § 1997e(c); 28

U.S.C. §§ 1915(e)(2), 1915A.  Plaintiff's action is subject to screening regardless of

whether he prepays the entire filing fee or proceeds as a pauper.  *Ruiz v. United States,*

160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th

Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999).  Plaintiff's *pro se* complaint

must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations

must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's claims against the Garza Unit Defendants be dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), and that the dismissal be counted as a "strike" for purposes of 28 U.S.C. § 1915(g).  It is respectfully recommended further that Plaintiff's remaining claims against the remaining Defendants be dismissed without prejudice.

## I.     JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.    PROCEDURAL BACKGROUND.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined at the Cotulla Unit in Cotulla, Texas.

On June 30, 2014, Plaintiff filed his original complaint alleging unconstitutional conditions of confinement while he was housed temporarily at the Garza East Transfer Facility in Beeville, Texas, from April 7, 2014 through June 29, 2014.  (D.E. 1).  He named as Defendants the TDCJ Transitorial Planning Department and Southern Regional Institutional Division.  *Id.* at 2.

On August 21, 2014, Plaintiff was granted an extension of time until September 30, 2014 to file an amended complaint.  (D.E. 13).  On October 1, 2014, a *Spears*[1] hearing was conducted.  On October 29, 2014, the undersigned magistrate judge entered a Memorandum and Recommendation (M&R) that Plaintiff's constitutional and retaliation claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  (D.E. 19).  On November 17, 2014, Plaintiff was granted an extension of time until December 22, 2014 to file objections to the M&R.  (D.E. 22).  On December 22, 2014, Plaintiff filed a notice of filing objections.  (D.E. 23).

On December 29, 2014, Plaintiff filed a 297-page pleading entitled "Objection to Memorandum-Recommendation to Dismiss Action and Amended Complaint."  (D.E. 25).  In his amended complaint, Plaintiff is no longer suing the TDCJ Transitorial Planning Department and Southern Regional Institutional Division.  (D.E. 25, p. 1).  However, he has named as Defendants his ex-wife Mayra Rubio Sanchez, the complainant and victim in both criminal actions; six (6) San Antonio police officers; several Bexar County District Attorneys; his court-appointed trial and appellate counsel; justices on the Fourth Court of Appeals; and members of the State of Texas Board of Pardons and Paroles.  (D.E. 25, pp. 1, 7-8, 15-20).  Plaintiff has named also two prison officials assigned to the Cotulla Unit, Warden Barber and Officer Diaz.  (D.E. 25, pp. 1, 19).  Finally, Plaintiff has sued the following Garza Unit officials/employees: (1) Major

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Harris; (2) Officer R. Trevino; (3) Officer Mitchell; and (4) John and Jane Does working in the Garza West Unit Mail Room.  (D.E. 25-1, pp. 24-27, and 25-2, pp. 1-2).

Plaintiff is suing all Defendants in their official and individual capacities.  (D.E. 25, p. 1).   He seeks an injunction ordering Defendants "to stop their harassment campaign," as well as compensatory and punitive damages.  (D.E. 25-2, pp. 24-25).

## III.   PLAINTIFF'S EVIDENCE AND ALLEGATIONS.

### A.   Plaintiff's criminal convictions.

On April 18, 2011, Plaintiff was found guilty of family violence with strangulation against his wife, complainant Mayra Rubio Sanchez, in Cause No. 2011-CR-1002 in the 226th Judicial District Court of Bexar County, Texas, and sentenced to two (2) years in the TDCJ-CID.[2]   (D.E. 25-3, pp. 1-3).   His court appointed counsel was Defendant Rebecca P. Bustamante.  (D.E. 25-3, p. 1).   While on parole for that offense, Plaintiff was charged in a three-count indictment with aggravated kidnapping, sexual assault, and family violence in Cause No. 2012-CR-1969 in the 290th Judicial District Court of Bexar County, Texas.  (D.E. 25-5, pp. 1-9).  On December 3, 2012, a jury found Plaintiff guilty of assault/family violence and sentenced him to ten (10) years in the TDCJ-CID and assessed a fine in the amount of $10,000.00 in Cause No. 2012-CR-1969.  (D.E. 25-8, p. 1).   Plaintiff was also convicted of unlawful restraint and sentenced to one-year

---

[2] In his amended complaint (D.E. 25), Plaintiff has provided over 290 pages of his past criminal proceedings and records, and the details provided herein are garnered from those documents.

confinement in the county jail and assessed a fine of $4,000.00.  *Id.*  He was found not guilty of aggravated kidnapping and sexual assault.  (D.E. 25-5, pp. 2-3).

Represented by counsel, Plaintiff appealed his conviction in Cause No. 2012-CR-1969 to the Fourth Court of Appeals in Appeal No. 04-12-00815-CR.  (D.E. 25-5, pp. 10-38).  On April 15, 2013, the Fourth Court of Appeals heard arguments on Plaintiff's motion to discharge his counsel and proceed on appeal *pro se* because Plaintiff believed Defendant George Eastland was working in coercion with the prosecution.  (D.E. 25-7, p. 11).  The Fourth Court of Appeals granted his motion to proceed *pro se* (D.E. 25-7, pp. 19)*, and on December 12, 2013, Plaintiff filed a reply brief to the State's response.  (D.E. 25-6, pp. 1-29).  On June 25, 2014, the Fourth Court of Appeals affirmed Plaintiff's convictions.  (D.E. 25-8, pp. 1-14).  There is no documentation to suggest that Plaintiff filed a Petition for Discretionary Review (PDR) with the Texas Court of Criminal Appeals; however, in his amended complaint, Plaintiff states that he filed a writ of certiorari with the United States Supreme Court, No. 14-50061.  (D.E. 25-2, p. 2).

### B.    Original Complaint allegations.

In his original complaint, Plaintiff introduces himself as a "jail house lawyer" and "sentinel of human rights in Texas."  (D.E. 1, p. 1).  He claims that his current incarceration in Cause No. 2012-CR-1969 is the result of "premeditated kidnapping" and a "malicious conspiratorial trial" involving his appointed defense counsel, the prosecutor, and the trial court.  He correctly points out that the jury actually found him not guilty of aggravated kidnapping and sexual assault, but claims he was "unconstitutionally re-

convicted" for assault of Mayra Rubio Sanchez arising from his earlier conviction in Cause No. 2011-CR-1002.   Plaintiff claims that his current conviction wrongfully includes the earlier 2011 conviction in violation of the double jeopardy clause.

On April 7, 2014, Plaintiff was transferred from the Bexar County Jail to the Garza East Transfer Facility.  (D.E. 1, p. 3).  Plaintiff claims that he was subjected to "continuous harassment" and "the spoliation of [his] personal and legal mail" in retaliation for his exercising his right of access to the courts, as well as for assisting "thousand[s] of vulnerable immigrants and illiterate American citizens…" to their right of access to the courts.  *Id.*

At the October 1, 2014 *Spears* hearing, Plaintiff testified that on June 26, 2014, the "harassment campaign" became even more evident.  Plaintiff was cleaning the shower, Officer Mitchell arrived and ordered Plaintiff to come to Dorm 6 sally port.  Plaintiff arrived at the sally port and found Officer R. Trevino "tampering and reading [Plaintiff's] reporter's record and clerk's record and [she] took possession of 80 postage stamps and stamped envelopes… without legal reason to confiscate them…". (D.E. 1, p. 3).  Plaintiff informed Officer Trevino that he had legally purchased the stamps at the prison commissary and that he had a constitutional right to be a jail house lawyer and to assist other inmates with their litigation.   However, Officer Trevino kept the stamps and envelopes.

The harassment of Plaintiff continued.  Plaintiff recently filed on behalf of another inmate a complaint before the International Court of Human Rights in which Plaintiff

furnished to that court "material evidences of the *modis operandi* (sic) of the Texas Judicial System, and innocence of at least 80% of prisoners wrongfully convicted." (D.E. 1, p. 4). However, this correspondence was tampered with and opened, and Plaintiff has no proof that it was received by the Hague Court in the Netherlands. *Id.* Other correspondence has been lost and/or stolen. For example, Plaintiff received on May 29, 2014 correspondence from the Fifth Circuit dated May 6, 2014, giving him 30 days to respond to a district court's denial of his motion to proceed *in forma pauperis* with no explanation for the delay. Plaintiff testified that he was able to submit the i.f.p. application timely, but the delay "caused him stress." He represented himself on his criminal appeal and he did not miss any deadlines.

In addition to the myriad of First Amendment violations, Plaintiff complains he and the other inmates are subjected to unsanitary and unhealthy conditions in the Garza East dorms, including bacteria and mold. Plaintiff obtained the signatures of twenty-eight other inmates complaining about the conditions and submitted the complaint to the Mayor of Beeville. Warden Pawelek told Plaintiff that he would get transferred if he complained about the conditions, and on June 29, 2014, he was transferred to the Cotulla Unit. Plaintiff claims that he filed grievances protesting the transfer as being in violation of the Eighth Amendment, but his grievances were denied.

With his original complaint, Plaintiff filed the affidavit of Offender Hector Edwardo Vasquez attesting to the unsanitary conditions at the Garza East Unit. (D.E. 1-1, pp. 5-6). On September 10, 2014, Plaintiff filed the affidavit of Offender Victor Diaz,

a Cotulla Unit inmate, who testifies to the "philanthropic legal work" Plaintiff performs for others. (D.E. 15, pp. 1-2). Plaintiff also offers the affidavit of Offender Tommy Harris, also at the Cotulla Unit, who testifies that, since engaging the legal assistance of Plaintiff, he has suffered retaliatory conduct by prison staff. (D.E. 16, pp. 1-2).

### C.    Amended Complaint allegations.

In his amended complaint, Plaintiff is suing various individuals that were involved in his criminal convictions, some of whom are not state actors. He claims that his ex-wife, Mayra Rubio Sanchez is insane and that her charges against him were fabricated. (D.E. 25, p. 12). He is suing Edward Garcia alleging that this individual took advantage of Ms. Rubio Sanchez' insanity and vandalized Plaintiff's warehouse and storage units. (D.E. 25, pp. 13-14). Plaintiff is suing San Antonio Police Officers Ochoa, Castellanos, Vara, Valadez, Porter and Bierman for, *inter alia,* arresting him on false charges. (D.E. 25, pp. 15-21). He is suing Rebecca Bustamante, his appointed counsel in Cause No. 2011-CR-1002, for ineffective assistance of counsel, and George Eastland, his counsel in Cause No. 2012-CR-1969, for conspiring with the prosecution to find him guilty. (D.E. 25, pp. 21-27). Plaintiff is suing Edward A. Garcia, Jr. as the foreman of the Bexar County grand jury that issued the indictment in Cause No. 12-CR-1969. (D.E. 25, p. 27-28). Defendant Susan Reed was the prosecuting District Attorney (DA) in Cause No. 2012-CR-1969, while Christopher Demartino was the Assistant DA. (D.E. 25, pp. 29-33 – D.E. 25-1, pp. 1-4). Defendant David Geyer is a Bexar County Juvenile Detention Center Officer. (D.E. 25-1, p. 5). Plaintiff claims that Mr. Geyer was a "false witness"

against him.  *Id.*   Defendant Kevin Yearly represented the State in Plaintiff's appeal to the Fourth Court of Appeals.  (D.E. 25-1, p. 8).  Defendant Donna McKinney is the Bexar County District Clerk and Plaintiff claims that she, "with evil intent," failed to file his state habeas corpus petition in Cause No. 2011-CR-1002 and engaged in other "trickery." (D.E. 25-1, pp. 10-13).  Alice Gonzales is the supervisor of the criminal support staff of the Bexar County District Clerk's Office, and Plaintiff claims that this Defendant conspired with DA Demartino to not furnish Plaintiff a copy of the record in Cause No. 12-CR-1969 as ordered by the Fourth Court of Appeals.  (D.E. 25-1, pp. 13-14).

Plaintiff has sued four justices on the Fourth Court of Appeals, Catherine Stone, Marilyn Barnard, Rebecca Martinez, and Patricia Alvarez, as they issued the opinion affirming his convictions.  (D.E. 25-1, pp. 14-20).  Plaintiff is suing State Parole Board members Juanita Gonzales, Anthony Ramirez, and Charles Speier alleging that they denied his parole without sufficient evidence.  (D.E. 25-1, pp. 20-22).  Plaintiff claims that Parole Officer Jesus Salinas threatened him and caused him to dismiss his appeal in exchange for his release on parole.  (D.E. 25-1, pp. 22-23).

As to the Garza Unit Defendants, Plaintiff claims that Major Harris knew of unconstitutional conditions of confinement as it concerned the food, air quality, and temperatures in the Garza East Unit.   (D.E. 25-1, pp. 24-26).   Plaintiff claims that Defendants Trevino and Mitchell are "subordinates of Defendant Harris" and participated in the violation of his Eighth Amendment rights.  (D.E. 25-1, p. 27 – D.E. 25-2, p. 1). Plaintiff claims that the John and Jane Doe Defendants of the Garza West Unit mail room

delayed his legal mail "with the evil intent to obtain the dismissal of Criminal Appeal No. 01-12-00815-CR and Federal Appeal No. 14-50061." (D.E. 25-2, p. 2).

Finally, Plaintiff has sued Warden Matt Barber and Classification Officer Diaz, both of the Cotulla Unit, alleging that these Defendants have violated his due process rights in regards to finding him guilty of disciplinary violations without adequate notice and hearing, have interfered with his right of access to the courts, and have denied him adequate conditions of confinement. (D.E. 25-2, pp. 3-5).

## IV.   LEGAL STANDARD.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.*

## V.     DISCUSSION.

### A.     Plaintiff's Amended Complaint and Objections are untimely.

Plaintiff was granted an extension of time until September 30, 2014 to file his amended complaint.  (D.E. 13).  He did not actually file an amended complaint until he filed his objections to the M&R on December 29, 2014.  (D.E. 25).  He was granted an extension of time until December 22, 2014 to file his objections to the M&R (D.E. 22), but all he filed on that day was a 2-page "notice" of filing objections (D.E. 24); the actual objections were not filed until a week later on December 29, 2014.  (D.E. 25).  However, because neither Plaintiff's objections or amended complaint affect the recommendation that Plaintiff's claims against the Garza Unit Defendants be dismissed with prejudice and count as a § 1915(g) strike, and his remaining claims dismissed without prejudice, it is respectfully recommended that the Court consider Plaintiff's objections and amended complaint in assessing the disposition of this action.

### B.     No jurisdiction over Bexar County Defendants.

In his amended complaint (D.E. 25), Plaintiff has now named as Defendants numerous individuals associated with his criminal convictions arising in Bexar County, Texas.  On their face, these claims appear to be wholly without merit and subject to various valid defenses ranging from absolute prosecutorial and judicial immunity to qualified immunity and limitations.  However, the Court need not address the merits of those claims as the state actor Defendants are alleged to live in Bexar County, Texas, and that is also where the alleged constitutional violations are alleged to have occurred.

Bexar County is located in the United States District Court for the Western District of Texas, San Antonio Division.   28 U.S.C. § 124(d)(4).   This Court does not have jurisdiction over those claims, and it is respectfully recommended they be dismissed without prejudice.   Because they appear frivolous, it is not recommended that they be transferred to the San Antonio Division.

### C.      Non-state actors.

Plaintiff has sued his former spouse and her friend, Edward Garcia.   He does not state where Ms. Rubio Sanchez resides but claims that Mr. Garcia lives in Corpus Christi. Regardless of their residences, Plaintiff cannot sue either of these individuals for violations of his constitutional rights under § 1983 because he fails to establish that either of these Defendants was acting under color of state law and deprived him of a federal right.   *Cinel v. Connick,*   15 F.3d 1338, 1342 (5th Cir. 1994).   Ms. Rubio Sanchez was simply the complainant/victim in the State's criminal actions against Plaintiff, and Mr. Garcia is charged only with assisting Ms. Rubio Sanchez in seizing Plaintiff's property. These allegations fail to state cognizable constitutional violations, and it is therefore recommended that they be dismissed.

### D.      Improper venue for Cotulla Unit Defendants.

Plaintiff is currently confined at the Cotulla Unit.   In his amended complaint, he added claims against Cotulla Unit Warden Matt Barber and Classification Officer Diaz objecting to their handling of a disciplinary case against him as well as complaints about

a fan and legal mail.  In support of these claims, he has attached copies of his grievances regarding those manners.  (*See* D.E. 25-9, pp. 13-20).

The Cotulla Unit is located in La Salle County, Texas, which is located in the Southern District of Texas, Laredo Division.  28 U.S.C. § 124(b)(3).  Even if this Court were to exercise jurisdiction over these claims, Defendants could raise the meritorious defense of lack of personal jurisdiction.  Moreover, venue is proper in the Laredo Division.  *See* 28 U.S.C. § 1391(b).  Accordingly, it is respectfully recommended that the Court dismiss these claims without prejudice to Plaintiff refiling them in the proper court should he so desire.  Again, it is not recommended that these claims be severed and transferred because, on their face, they appear without merit.  Moreover, the claims arose in late 2014 and therefore Plaintiff has no imminent limitations deadline should he decide to pursue them.

### E.	Claims against the Garza Unit Defendants.

### (1)	Eleventh Amendment Immunity.

Plaintiff has sued the Garza Unit Defendants in their official and individual capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state…."  Const. amend. XI. This withdrawal of jurisdiction effectively confers immunity from suit.  *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 144 (1993).  When a plaintiff files suit

against state officials in their official capacities, the lawsuit is effectively one against the State. *Hafer v. Melo,* 502 U.S. 21, 25 (1991).  That is, a claim for monetary damages against a state official in his or her official capacity is "no different from a suit against the state itself," and consequently, is barred by the Eleventh Amendment.[3]  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).  *See also McKinley v. Abbott,* 643 F.3d 403, 406 (5th Cir.), *cert. denied*, 132 S. Ct. 825 (2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself.").  The Fifth Circuit has repeatedly held that the Eleventh Amendment bars claims for money damages against TDCJ officers in their official capacities.  *See e.g., Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

To the extent Plaintiff is suing any Defendant in his or her official capacity for money damages, those claims are barred by the Eleventh Amendment and it is respectfully recommended that those claims be dismissed with prejudice.

### (2)    *Conditions of confinement.*

In his amended complaint, Plaintiff argues that, in Warden Pawelek's absence, Defendant Major Harris was in charge of the Garza East Unit and that, under his supervision, Plaintiff was subjected to unconstitutional conditions of confinement

---

[3] The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief.  *Ex parte Young*, 209 U.S. 123, 159 (1908) (establishing exception to Eleventh Amendment immunity in cases where the alleged constitutional violation is caused by a state official's actions or refusal to act within the authority of his or her office).  In this case, to the extent Plaintiff sought injunctive relief against the Garza Unit Defendants, his transfer off that unit rendered those claims moot.  *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (request for injunctive and declaratory relief becomes moot when inmate leaves the complained-of facility).

involving unsanitary housing, inadequate food, poor air quality, and extreme temperatures.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  Deliberate indifference is more than mere negligence.  *Id.* at 835.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  *Id.* at 837.

The Fifth Circuit has recognized that an unsanitary environment can support an Eighth Amendment claim of deliberate indifference.  For example, in *Daigre v. Maggio*, 719 F.2d 1310 (5th Cir. 1983), the Fifth Circuit noted:

As a safeguard against the "gratuitous infliction of suffering," the eighth amendment forbids confinement under conditions that can lead to painful and tortuous disease with no penological purpose.  We concluded over a decade ago that the eighth amendment forbids deprivation of the basic elements of hygiene.  We observed this "common thread" woven through judicial condemnations of prison conditions, noting in most of the prior cases the deprivation of facilities for elementary sanitation.

*Daigre*, 719 F.2d at 1312.

(a)     *Bacteria and mold in showers.*

Plaintiff claims that the conditions on the Garza East Unit were unsanitary and unhealthy because there was visible bacteria and mold in the showers.   However, Plaintiff admitted that he did not suffer any illness or harm as a consequence of the mold or bacteria on the Garza Unit, and the mere possibility of contracting an unknown illness does not state an Eighth Amendment claim.  *See Ingraham v. Wright,* 430 U.S. 651, 674 (1977) ("there is … a *de minimis* level of imposition with which the Constitution is not concerned.").

(b)     *Inadequate food.*

Plaintiff complains that "the confines in the TDCJ IV Region are being deprived of nutritious meals…".  (D.E. 25-1, p. 24).

The Constitution requires only that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health.  *See Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986).  The constitutionality of prison food simply is not measured by its variety and gastronomic appeal.  *See e.g. Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir. 1981) (diet consisting "mainly of starch and carbohydrates with few vegetables and fruits," while "likely dull," is not constitutionally inadequate), overruled on other

grounds, *International Woodworkers of America v. Champion International Corp.,* 790 F.2d 1174 (5th Cir. 1986).

Plaintiff states that the food is prepared under "unsanitary conditions" and that it is not "strange" to see rats, rodents or bugs in the dining room.  However, Plaintiff does not claim that he became ill while eating food prepared at the Garza Unit, nor did he complain of sudden weight loss or any resulting medical condition caused by lack of nutritious food.  He does not claim that he was denied or deprived of essential food.  His bald, conclusory allegations fail to state cognizable claims.

(c)     *Air quality.*

Plaintiff claims the air quality at the Garza East Unit violates the Eighth Amendment because it contains asbestos.  (D.E. 25-1, p. 26).  However, Plaintiff has failed to allege any facts to demonstrate that any Garza Unit Defendant or official is aware of the presence of asbestos in the facility, or that if asbestos is present, that it is causing a specific risk of harm to Plaintiff or any other prisoner.  *See Lineberry v. United States,* 436 Fed. Appx. 293, *1 (5th Cir. Jun. 3, 2010) (per curiam) (unpublished) (no Eighth Amendment claim stated unless prisoner can show prison officials knew asbestos was present and knew asbestos posed specific risk of harm to inmates).  Moreover, Plaintiff again fails to claim that he suffered any injury as a result of exposure to asbestos.

(d)     *Temperature.*

Plaintiff claims that he was subjected to temperatures over 100 degrees while confined at the Garza Unit.  (D.E. 25-1, p. 26).  The Fifth Circuit has recognized that

exposure to extreme heat or extreme cold under certain circumstances may constitute a constitutional violation, but such a claim is evaluated on a case by case basis.   Cold temperatures are tolerable when extra bedding is provided, and extreme heat may be problematic for one inmate, but not another.   *See e.g. Johnson v. Texas Bd. of Crim. Justice,* 281 Fed. Appx. 319, *2 (5th Cir. 2008) (per curiam) (unpublished).   Here, although Plaintiff alleged that temperatures were sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions on numerous occasions during his April 7, 2014 through June 29, 2014 time at the Garza Unit.   This is not sufficient to state a constitutional claim.   *See Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995) (Eighth Amendment claims involving allegedly uncomfortably high temperatures in lockdown and aggravation of sinus condition as a result of the temperature did not survive summary judgment).

Plaintiff's complaints about the conditions at the Garza Unit fail to state Eighth Amendment violations because he fails to allege that the Garza Unit Defendants knew of a serious risk to his health and safety and then ignored that risk, and further, he admits that he suffered no injuries as a consequence of the complained-of conditions.   These claims can be dismissed with prejudice.

### (3)     *Denial of access to the courts.*

Plaintiff testified that Officer Trevino confiscated eighty (80) postage stamps, some envelopes, and read Plaintiff's trial record, and that Officer Mitchell was complicit in this activity because he escorted him to the area.   Plaintiff also complains in general

that the Garza West Unit Mail Room staff interfered with his access to the courts because they hindered his ability to be a jail house lawyer.

Prisoners have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement). Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis,* 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356. He must show "that his position as a litigant

was prejudiced" as a direct result of the denial of access. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

In this case, Plaintiff has failed to allege, let alone offer any evidence to establish, that he was prejudiced as a litigant in any nonfrivolous litigation as a consequence of the actions of Officer Mitchell, Officer Trevino, or any John or Jane Doe Mail Room employee. Although he complained of a delay in receiving a notice from the Fifth Circuit regarding his i.f.p. application, he does not attribute that delay to any named officer, nor does he allege any injury arising from that delay. To the contrary, Plaintiff reports that he is a successful litigator for himself and many other offenders, and he fails to identify any prejudice as a consequence of the actions or omissions of Officer Trevino, Officer Mitchell, or an unidentified Defendant. Thus, Plaintiff fails to state a claim for denial of access to the courts.

### *(4)    Retaliation.*

Plaintiff claims that his stamps and envelopes were taken, and that he was transferred off the Garza East Unit in retaliation for his being a "jail house lawyer" and assisting other inmates with their litigation.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008), quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.

2006).  "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris*, 449 F.3d at 686.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998).  An inmate must allege more than his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).  Mere conclusory allegations of retaliation will not withstand a summary judgment challenge.  *Woods*, 60 F.3d at 1166; *see Garner v. Moore*, 536 Fed. Appx. 446, 450-51 (5th Cir. 2013).

Plaintiff offers nothing more than conclusory allegations that he was retaliated against.  His transfer was inevitable because the Garza Unit is a *transfer facility*, and as Plaintiff cannot demonstrate that he was transferred to the Cotulla Unit in retaliation for exercising his right of access to the courts.  As to the incident with Officer Trevino confiscating his stamps and envelopes and reading his trial transcript, Plaintiff fails to allege that, but for a retaliatory motive, the complained of action would not have otherwise happened.  It would be unusual to allow an inmate to have eighty stamps and envelopes in his possession at a single time as indigent supplies are passed out on an as

needed basis.[4]  Plaintiff cannot establish that, but for the exercise of a constitutional right, Officer Trevino would not have confiscated the stamps and envelopes.  Accordingly, it is respectfully recommended that Plaintiff's retaliation claim be dismissed.

## VI.    RECOMMENDATION.

Plaintiff's untimely 297-page amended complaint fails to raise cognizable constitutional claims against the Garza Unit Defendants, the only individuals over which this Court has proper jurisdiction and venue.  Thus, it is respectfully recommended that the Court dismiss with prejudice Plaintiff's claims against Major Harris, Officer Mitchell, Officer Trevino, and the John and Jane Doe Mail Room Defendants for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § § 1915(e)(2) and 1915A(b)(1), and that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g) against this Plaintiff, with notice of the dismissal forwarded to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler Texas, 75702, Attention: Betty Parker.  It is respectfully recommended that Plaintiff's remaining claims against the remaining Defendants be dismissed without prejudice.

Respectfully submitted this 15th day of June, 2015.

_Jason Libby_

Jason B. Libby
United States Magistrate Judge

---

[4] Plaintiff is proceeding i.f.p. in this case (D.E. 14) and it is assumed that he is indigent and receives his indigent supplies from the law library and mail room as needed.

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).